HENRY LEMBECK

*v.*

THE MAYOR AND ALDERMEN OF JERSEY CITY.

1. Under the act to quiet titles, etc. (*Rev.* p. 1189), a bill may be filed for relief against the alleged lien of municipal assessments for improvements.

2. The reports of commissioners of re-assessments made under the act of 1873 (*P. L.* 1873, p. 442), were relied on in this case. While vitally defective in other respects, they did not even show that the commissioners determined the amount of the assessments on each lot.—*Held*, that they constituted no lien.

3. The legislature has no power to fasten upon any lot an unconstitutional assessment, by a statutory limitation as to the time or mode in which the owner must object thereto.

---

Bill to quiet title. On final hearing on pleadings and proofs.

Lembeck v. Mayor, &c. of Jersey City.

*Messrs. Collins & Corbin*, for complainant.

*Mr. Leon Abbett* and *Mr. H. Traphagen*, for defendants.

THE CHANCELLOR.

The bill is filed against the corporation of Jersey City, under the act " to compel the determination of claims to real estate in certain cases, and to quiet title to the same" (*Rev.* p. 1189). Under the act, such a bill may be maintained to quiet title as against alleged encumbrances. *Holmes* v. *Chester*, 11 *C. E. Gr.* 79; *Bogert* v. *City of Elizabeth*, 12 *C. E. Gr.* 568.

The city, in its answer, sets up a claim upon the premises of the complainant described in the bill. It is the lien or encumbrance of certain alleged assessments for municipal improvements therein mentioned, which, it alleges, " were confirmed" by commissioners appointed by the justices of the supreme court, in accordance with the act entitled "An act to adjust unpaid assessments in Jersey City," approved March 26th, 1873 (*P. L.* 1873, p. 442). It is not alleged in the answer, nor was it claimed on the hearing, that the complainant is barred or estopped in any way from denying the legality of the assessments. The original assessments are not set up in the answer, and they have not been proved or produced. Only the reports made by the commissioners, under the act of 1873, were set up and proved, and they alone were relied on by the defendants. The defendants rely entirely on the action of the commissioners in reference to the original assessments. It appears, by the reports of the commissioners, that, as to two of those assessments, they merely confirmed them, without adjudging or determining that the amounts assessed on the property owners for benefits were not beyond the amount of benefit received, or even that the property was benefited at all. They merely declared what the true cost was, and confirmed the original assessment, whatever it may have been.

The act of 1873 provides that the commissioners, " after examination, shall determine and adjudge what would have been a reasonable and fair cost of the improvement, what lands are benefited by the improvement, the proportion of benefit received by each lot of land, and assess on each lot such proportion of what would have been a reasonable cost of the improvement, the expense of the improvement as the lot or parcel of land shall be benefited by the same, the remainder of the costs, charges and expenses of the improvement shall be borne and paid by the city at large," &c. A mere confirmation of the original assessment confirms it with all its infirmities, if any it has. If the original assessment did not confine the assessment within the limit of the amount of benefit actually conferred, the mere confirmation of it left it still subject to the objection. It was expressly the duty of the commissioners, under the act, to confine the assessments within that limit. They were to assess on each lot such proportion of the reasonable costs as should be commensurate with the benefit derived from the improvement (they could not lawfully assess more thereon), and it is expressly declared that the remainder of the costs shall be borne and paid by the city at large. In the two instances under consideration, they did not determine whether any part of the cost ought to be borne by the city at large, nor whether the whole cost ought to be borne by the property, nor whether the property was benefited to the full extent of the cost, nor, as before remarked, that it was benefited at all, nor that the complainant's land should pay any part of the cost. What the original assessments referred to in those reports were, is not shown, and it does not appear whether they were constitutional or not, nor whether they were made under a law which was constitutional or not.

In the other assessments their adjudication was defective, because, though it determined what the reasonable cost of the work was, and the part of it which ought to be borne by the city at large, it does not appear from it that the property was

not assessed beyond the benefit received, nor did they assess any part of the cost on the complainant's land. The assessments in those cases were necessarily new ones, for the amounts to be assessed on the property were less than those which were assessed upon them in the original assessments.

It appears, then, that those assessments were made by the commissioners of 1873, on a principle which has been repeatedly and unequivocally condemned by the adjudication of the highest tribunal of the state—the assessment of the cost on the property without regard to the amount of actual benefit. No assessment upon the complainant's land is made by any of the reports. It may be added (although, as before stated, no question was raised on that subject on the hearing), that the legislature cannot fix an unconstitutional assessment upon the property owner merely by fixing a limitation to his right to object to it, or by requiring him to object within a certain time, or in a certain way, under penalty of being regarded as having waived his objection.

The complainant is entitled to a decree that the defendants have no claim against the land described in the bill, for they have shown none whatever.